Michael L. MARTIN,
Plaintiff–Appellant,

v.

Sheriff Richard TYSON, et al.,
Defendants–Appellees.

No. 87–2371.

United States Court of Appeals,
Seventh Circuit.

Submitted March 29, 1988.[*]

Decided May 9, 1988.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App. P. 34(a); Circuit Rule 34(f). No one filed such a statement, and the appeal is submitted on the briefs and record.

Michael L. Martin, pro se.

Patrick J. Hinkle, Law Office of R. Kent Rowe, South Bend, Ind., for defendants-appellees.

Before FLAUM and EASTERBROOK, Circuit Judges, and PELL, Senior Circuit Judge.

PER CURIAM.

Michael L. Martin filed this action under 42 U.S.C. § 1983 against Sheriff Richard Tyson, various Commissioners of Marshall County, Indiana, and prison employees, as individuals and in their official capacities, for violating his constitutional rights while Martin was a pretrial detainee. The district court granted summary judgment in favor of the defendants, and this appeal followed.

## I

In 1982 Martin was arrested for arson and held in the Marshall County jail for 21 days, until released on bond. In September 1983 Martin was arrested in Houston, Texas, for interstate flight to avoid prosecution. Martin was returned to the Marshall County jail, where he remained until he escaped on November 25, 1983.[1] On September 19, 1984, Martin was arrested in Ohio for non-support and was held in an Ohio jail until October 18, 1984, when he was returned to the Marshall County facility. Martin remained in the Marshall County jail until February 11, 1985. This suit is based on the conditions of Martin's confinement in the Marshall County jail between October 18, 1984, and February 11, 1985.

## II

### A. Allegation Nine

Martin's original complaint contained ten allegations and named only the Commissioners of Marshall County and Sheriff Tyson as defendants. On March 7, 1986, Martin was given leave to amend his complaint. His amended pleading added the remaining defendants and restated the allegations of his original complaint. Martin did not mention Allegation Nine of his original complaint in the amended complaint. Allegation Nine was that Martin had been denied access to newspapers during his confinement. The district court interpreted Martin's omission of Allegation Nine as a decision on his part not to pursue this claim, which the court then dismissed.

■ The language of Martin's amended complaint suggests that Allegation Nine was incorporated by reference. Martin asked the court to

allow the following wording [in the amended complaint] in addition to the wording already contained in the complaint.

Given the obligation to accord a liberal reading to *pro se* pleadings, see *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), we find that Martin's Allegation Nine survived the amendment of the complaint. The district court should consider this claim on the merits.

■ We have previously found the arbitrary denial of access to published materials violates an inmate's first amendment rights. *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir.1987); *Kincaid v. Rusk*, 670 F.2d 737, 744–45 (7th Cir.1982). See also *Mann v. Smith*, 796 F.2d 79, 82 (5th Cir.1986). Sheriff Tyson's affidavit confirms that newspaper delivery to the Marshall County jail inmates was prohibited, although Tyson stated that newspapers could be received on a subscription basis.[2] Martin argues that this portrayal of the

---

1. Martin objects to any reference to his 1983 departure from the jail as an escape, since the criminal charge against him for the escape was later dropped pursuant to a plea agreement. Martin can use whatever nomenclature he likes, but an unauthorized departure from jail is an escape. *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). That Martin has not been *convicted* of escape does not alter the facts.

2. The newspapers would be delivered by mail, a method that would presumably minimize the potential for smuggling contraband into the institution. See, e.g., *Bell v. Wolfish*, 441 U.S. 520, 549, 99 S.Ct. 1861, 1879, 60 L.Ed.2d 447 (1979).

facts is inaccurate, and that the ban on newspapers was absolute. Since the district court has not addressed the merits of this allegation, we must remand the issue.

### B. Defendants Overmyer, Schultz, and Baker

The district court dismissed the claims against defendants Overmyer, Schultz, and Baker, then Commissioners of Marshall County. The court held that the Commissioners had no personal involvement with Martin, which precluded liability under § 1983. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986), citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). Martin cites several Indiana statutes establishing the administrative standards for state prisons. He argues that the Commissioners were statutorily required to comply with certain policies. This is irrelevant, since a violation of state law does not create liability under § 1983. *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 434–35 (7th Cir.1986).

Martin also sues the Commissioners in their official capacities, which makes this a claim against the governmental unit. *Monell v. Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978). Although the doctrine of *respondeat superior* is inapplicable to § 1983 actions, *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037, a county may be held liable for its official policies. Under *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979), a policy that "amounts to punishment of the detainee" is unlawful. There is no evidence, however, that the Marshall County jail's policies were designed to deprive pretrial detainees of their due process rights. The district court therefore properly granted summary judgment on this claim.

### C. Defendants Tyson, Criswell, Glant, Hesler, and Woodward

Defendants Tyson (Sheriff of Marshall County), Criswell (a police officer), Glant, Hesler, and Woodward (three employees of the jail), may have been directly involved with Martin's confinement. The rights of pretrial detainees are protected under the Due Process Clause of the fourteenth amendment, which prohibits punishment of persons who have not been convicted of a crime. *Bell*, 441 U.S. at 536 n. 16, 99 S.Ct. at 1872 n. 16. The district court decided that Martin had not been "punished" prematurely.

#### 1. Conspiracy

Martin alleges that defendant Criswell conspired with Ohio jail officials. When contacted by the Ohio authorities, Criswell identified Martin as an inmate escaped from the Marshall County jail. As a result, Martin maintains that he was incorrectly classified in the Ohio facility. As the district court observed, however, the defendants had no control over the administration of the Ohio jail. Furthermore, Criswell accurately stated Martin's status. Martin protests that since the charges against him for the escape were later dropped, the information given to the Ohio authorities was erroneous. On the contrary, Criswell's statement corresponded with the facts. Plea bargains (which led to the dropping of the escape charge) do not retroactively alter facts.

#### 2. Visitation Policy

Martin also complains of the visiting policy at the jail. The jail limited both the number of visitors and the length of the visits, and "contact" visits were prohibited. On one occasion, Martin's mother was denied the opportunity to visit with him because she arrived on a day when no visits were scheduled. The Marshall County jail officials assert that these limitations were necessary due to the small size of the jail and the number of people to be accommodated.

The size and location of a facility are relevant factors in determining whether a plaintiff has been constitutionally harmed. *Penland v. Warren County Jail*, 797 F.2d 332, 335 (6th Cir.1986). The Marshall County jail is a small detention facility in a rural area. Courts must play a limited role in the administration of detention centers. *Block v. Rutherford*, 468

U.S. 576, 584, 104 S.Ct. 3227, 3231–3232, 82 L.Ed.2d 438 (1984). Summary judgment for the defendants on this point was proper.

### 3. Access to Courts

■■■ Martin asserts that he was denied access to the courts because the Marshall County facility has no law library. Meaningful access to the courts must be provided. *Bounds v. Smith,* 430 U.S. 817, 823, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977); *United States ex rel. George v. Lane,* 718 F.2d 226, 230 (7th Cir.1983). As *Bounds* recognized, however, this need can be addressed in several ways. The relevant inquiry is whether the inmate has been given a "reasonably adequate opportunity" to present his claim. *Bounds,* 430 U.S. at 825, 97 S.Ct. at 1496.

Although the Marshall County jail does not have a law library, Martin was represented by counsel on his criminal charges. See *Love v. Summit County,* 776 F.2d 908, 914 (10th Cir.1985), *cert. denied,* — U.S. ——, 107 S.Ct. 66, 93 L.Ed.2d 25 (1986). The fact that Martin has pressed this suit suggests that he has not been constitutionally harmed. See *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987) (no detriment shown by denial of legal materials); *Mann v. Smith,* 796 F.2d 79, 84 (5th Cir. 1986) (no actual injury shown by pretrial detainee). He does not point to any claim that he was unable to pursue. Consequently, we find that the judgment for defendants on this allegation was appropriate.

### 4. Classification Hearing

■■■ Martin next contends that he was denied a classification hearing prior to his placement in a one-man cell, and later, in an eight-men cell. The fact that Martin was lodged with several other prisoners does not suggest that the practice was unconstitutional. *Bell,* 441 U.S. at 542, 99 S.Ct. at 1875 ("one man, one cell" principle is not required by Due Process Clause). Martin's complaint regarding the size of his cell is also without merit. See, e.g., *Mann,* 796 F.2d at 85 (detainee's contention that

his cell was too small to allow exercise found meritless).

■■■ Martin further insists that pretrial detainees should not be lodged with convicted inmates, and that his placement within the Marshall County jail was therefore unacceptable. It does not appear that the Marshall County jail had a classification scheme in place. However, classification of inmates, whether or not desirable, is not a constitutional requirement. See *Campbell v. Bergeron,* 486 F.Supp. 1246, 1249 (M.D.La.1980), affirmed mem., 654 F.2d 719 (5th Cir.1981). Martin has offered no indication that he has been injured by his cell placement. The grant of summary judgment on this ground is therefore affirmed.

### 5. Outside Recreation

■■■ Martin alleges that he was denied access to sunshine and fresh air, a cruel and unusual punishment and a violation of Indiana state law. We have recognized the importance of adequate ventilation, *Shelby County Jail Inmates v. Westlake,* 798 F.2d 1085, 1087 (7th Cir.1986), and exercise, *French v. Owens,* 777 F.2d 1250 (7th Cir. 1985), *cert. denied,* — U.S. ——, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986). However, Martin has offered no proof that the ventilation was either inadequate or harmful.

As for access to the outdoors: the defendants admit that Martin was not permitted to exercise outdoors but say there were no facilities to do so. And, they contend, there was adequate space within Martin's cell to allow exercise. Martin also posed a potential security risk, since he was facing criminal charges for an escape from the jail. See, e.g., *Bell,* 441 U.S. at 546 n. 28, 99 S.Ct. at 1878 n. 28 Since the limitation on his access to the outdoors is related to a legitimate prison concern, Martin has suffered no constitutional deprivation.

### 6. Mail Handling

■■■ According to Martin, the defendants opened his personal mail outside of his presence. As stated in *Martin v. Brewer,* 830 F.2d 76 (7th Cir.1987), the Free Speech Clause of the first amendment

applies to communications with prison inmates, particularly when one of the correspondents is not imprisoned. The communication is not without restriction, however, due to the security problems inherent in jails. *Id.* at 78. The inspection of Martin's personal mail for contraband served a legitimate purpose and did not violate his first amendment rights. As a pretrial detainee, Martin was not immune from the regulatory practices of the jail. *Bell,* 441 U.S. at 540, 99 S.Ct. at 1874 1875. Furthermore, the recognized safeguards on prison mail handling usually apply to the opening of legal mail, not personal correspondence. *Martin,* 830 F.2d at 78. Thus, there has been no constitutional infringement.

### 7. Segregation of Prisoners

■ Upon his arrival at the jail, Martin complains that he was placed in segregation for six days. At the time, Martin was facing a charge of felony escape. Since the segregation was a legitimate response to a security risk, it was permissible. *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Martin does not identify regulations comparable to those in *Hewitt* limiting the jailers' substantive discretion. The summary judgment for defendants on this ground is affirmed.

### 8. Physical Conditions

■ Martin complains of several other aspects of his confinement. For example, he protests that he was denied use of a pillow, and that he had to wear tennis shoes that had been previously worn. He objects to the lack of cleaning supplies and the infrequency of the laundry schedule. As the district court observed, the conditions at the Marshall County jail may be far from ideal. But again, the Marshall County jail is a small, rural jail, and jails do not have to duplicate the amenities of small, rural hotels. In order to make out a claim under 42 U.S.C. § 1983, Martin must show that intentional actions of the defend-

ants served to deprive him of a constitutional right. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). He has not been constitutionally harmed here.

### 9. Medical and Dental Care

■ Martin also complains that he was denied medical care on two occasions, and that there was no doctor on the staff of the jail. Martin had an ear infection during his stay at the jail.[3] He also broke his tooth while eating a bowl of beans that he says contained a rock. Martin contends that he requested treatment for his ear infection on October 19, 1984, and that he sought attention for his tooth as early as October 31, 1984, but that treatment for these conditions was delayed or denied.[4] Martin alleges that he has suffered permanent damage due to delay in treating his ear infection.

■ An act or practice that violates the eighth amendment also violates the due process rights of pretrial detainees. *Matzker v. Herr,* 748 F.2d 1142, 1146 (7th Cir.1984). Pretrial detainees' rights are infringed "when a jailer fails to promptly and reasonably procure competent medical aid". *Id.* at 1147. We do not condone delay in providing medical treatment. See *Matzker,* 748 F.2d at 1147 (medical care denied to the plaintiff for three months, resulting in permanent injury). Nonetheless, *Matzker* is limited to situations where medical treatment is withheld from an inmate with serious medical problems. A physician examined Martin on November 16, 1985. Martin never mentioned his tooth, or complained of any attendant pain when he met with the physician for his ear infection. The fact that Martin did not mention his tooth problem to the doctor who treated his ear infection is noteworthy. Although a dental professional would have been better suited to care for the tooth, the doctor might have been able to alleviate his discomfort. At the very least, the doctor could have alert-

---

**3.** It is not clear whether Martin arrived at the jail with the infection or whether the condition developed during his stay.

**4.** Martin was never provided with a dental appointment, and his tooth was removed in April 1985 upon his transfer to the Department of Correction Reformatory.

ed the jail administrators that dental treatment was required. Finally, Martin has not produced any evidence to sustain his allegation that he has suffered permanent damage as a result. Any delays in treating Martin, even if negligent, simply are not the type of deliberate indifference which the eighth amendment prohibits. *Shockley v. Jones,* 823 F.2d 1068, 1072 (7th Cir.1987).

### 10. Telephone Use

 Martin takes issue with telephone access at the jail. Inmates were entitled to place a telephone call every other day. For security reasons, the lines were monitored to ensure that they were placed to the designated party, although a non-monitored line was also available for legal calls. Due process rights are not infringed when the imposition in question is reasonably related to a legitimate governmental purpose. *Bell,* 441 U.S. at 538, 99 S.Ct. at 1873. Since security is a vital concern in jails, this practice is lawful.

### III

The district court's grant of summary judgment for the defendants is hereby affirmed. The dismissal of Allegation Nine is vacated, and the case is remanded for further proceedings.

PELL, Senior Circuit Judge, dissenting.

The court is sending one aspect of this case back to the district court for further proceedings regarding Martin's contention that while an inmate of a county jail, he was denied access to newspapers, a claim he did not, in the wording of this court's opinion, "mention" in the amended complaint the pertinent allegation which had been in the original complaint. There is no doubt in my mind that once the underlying facts, which are fairly obvious from our present record, are more explicitly developed, the district court will rule against Martin on this remaining issue and in due course, the case will be back again for a decision by this court. Aside, however, from the waste of valuable judicial resources, it appears to me that this court has given an overly generous reading of *Haines v. Kerner,* to the record before us. I therefore respectfully dissent.

Martin in his original complaint set forth eleven specific allegations, one of which dealt with the matter of newspapers and was as follows:

My Fourteenth and Fifth Amendment Rights to Equal Protection under the Law were violated when defendants refused Plaintiff Access to daily newspapers.

The original complaint was prepared while Martin had an address at Plymouth, Indiana, was hand printed, and was in confusing order with further supplemental allegations being added by way of additions. It contained, as stated above, eleven allegations. The amended complaint on the other hand, was typewritten in an orderly well-written fashion, citing, and sometimes quoting from, the Indiana Code on duties of custodians of prisoners. It is suggestive either of access to a prison library, he was incarcerated at the time in the Indiana Reformatory, or the assistance of a "jail house lawyer," or both.

The Amended complaint in its thirteen pages goes into specific detail on ten of the eleven original allegations. The remaining allegation, number nine, is at no place mentioned. It is true that in haec verba he also did not include the specific amount of $350,000 compensatory damages and $350,000 punitive damages he sought against each defendant, but he did think this was an important enough part of his case to devote the final paragraph to the "plaintiff should be granted all of the relief asked in his original complaint....," concluding with a final sentence: "In addition all other just and legal compensation this court believes the plaintiff is entitled to receive is asked for and should be granted in the premise."

It should come as no surprise that the district court in a thorough examination of the ten specific allegations of the amended complaint in its 13 page Memorandum and Order while evidencing that it had reexamined the allegations of the original complaint observed:

Apparently the plaintiff here is not asserting the complaint made in the original complaint but excluded from the amended complaint, with regard to being denied access to a daily newspaper.

The district court had before it the affidavit of Sheriff Richard Tyson, stating in part:

That delivery of daily newspapers is not allowed in the Marshall County Jail, but inmates may receive daily newspapers through the United States mail via their own subscriptions.

Nevertheless, this court's opinion seizes upon ambiguous language in Martin's amended complaint in holding that it *"suggests that allegation nine was incorporated into the amended pleading."* (emphasis added). Aside from the implicit recognition that there is a complete lack of reference in the amended complaint to allegation nine, although there is a detailed statement of the other ten, I simply do not find ample support, even under *Haines v. Kerner,* for a conclusion other than that Martin had determined he would abandon the weak claim, perhaps not to dilute the other ten which, to the extent there was merit in them, were the real meat of plaintiff's grievances. The general statement on the first page of the amended complaint, "to allow the following wording in addition to the wording already contained in the complaint" says nothing more than, "I have missed putting in some detail of the ones I am now pushing, which were in the original complaint, and I want to consider that wording also." Unless Martin already knew, as the Sheriff stated in his affidavit, the fact that he indeed could subscribe for newspapers through the mails, there was no reason whatsoever for his not repeating explicitly factual allegations to support his conclusory assertion that he had been "denied access." He was articulate as to the meaty allegations in providing supporting factual data dealing with claims about his alleged treatment while at the jail such as denial of access to law books, segregation, improper housing, lack of proper medical attention, verbal abuse, interference with mail et cetera, et cetera—indeed, nearly the entire panoply of prisoners' claims of violation of constitutional rights.

This court's opinion refers to the missing allegation as being "incorporated" in the amended complaint. As I understand the incorporation by reference situation it means the bringing into one document in legal effect, of the contents of another by referring to the latter in such a manner as to adopt it. I can see no justifiable basis, *Haines v. Kerner* or otherwise, for incorporating a specific claim which is at best conclusory when every other one of the other claims is spelled out in detail.

I have referred to the ninth allegation as conclusory because I so regard it. There was no specific allegation of how, where, or when the claimed "denial of access" occurred, although there was no such lack of detail even in the other parts of the original complaint.

Although we should view pro se pleadings liberally, such pleadings may not be merely conclusory. The complaint must allege facts, which if true, state a claim as a matter of law. *Martin v. Aubuchon,* 623 F.2d 1282, 1286 (8th Cir.1980).

Although as I have indicated, I regard the ultimate conclusion of this case in view of the Sheriff's affidavit as foreshadowed, nevertheless I have felt it necessary to record my dissent at this point where the litigation should have ended.