**Akina HINKFUSS and Daniel Hinkfuss, Individually, as Co–Personal Representatives of the Estates of Peter J. Lamczyk and James Lee Lamczyk and Daniel Joseph Lamczyk by their Guardian, Akina Hinkfuss, Plaintiffs,**

v.

**SHAWANO COUNTY, Walter E. Schardt, Donald J. Krueger, William J. Mott and Thomas G. Tuma, Individually and in their official capacities, Defendants.**

No. 90–C–0814.

United States District Court, E.D. Wisconsin.

Aug. 9, 1991.

---

**5.** Liability for compensatory damages is apparently still at issue under both the claim and the counterclaim.

William Hinkfuss, Hinkfuss, Sickel, Petitjean & Long, Green Bay, Wis., for plaintiffs.

David L. Weber, Denissen, Kranzush, Mahoney & Ewald, S.C., Green Bay, Wis., and W. Patrick Sullivan, Godfrey, Trump & Hayes, Milwaukee, Wis., for defendants.

## OPINION AND ORDER

CURRAN, District Judge.

The plaintiffs have filed suit under 42 U.S.C. § 1983 against the defendants, Shawano County, Walter E. Schardt, Donald J. Krueger, William J. Mott and Thomas G. Tuma.[1] The plaintiffs seek monetary damages for the suicide-death of Peter J. Lamczyk while he was in the defendants' custody in the Shawano County Jail. The defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the reasons stated below, the court grants the defendants' motion.

## UNDISPUTED FACTS

The following facts are uncontroverted.[2] Peter Lamczyk was arrested at 1:09 A.M. on September 13, 1989, by the Shawano City Police on a charge of disorderly conduct (domestic violence). The arrest was pursuant to a complaint by Lamczyk's ex-

---

1. The plaintiffs have filed also a wrongful-death suit in the Shawano County Circuit Court.

2. Additional relevant facts will be developed in the discussion.

wife, Akina Hinkfuss, who had called police stating that Lamczyk had chased her with a knife and threatened to kill her brother. Lamczyk was 29 years old at the time and had been drinking beer. According to the rap sheet this was the 25th time that Lamczyk had been arrested since 1975. He was transported to the Shawano County Jail, was booked and placed in the south receiving cell. During the book-in procedure Lamczyk stated that he had been drinking beer and that he had taken valium for his nerves. He explained that he had cancer and would need to see a nurse or a doctor. Lamczyk did not appear to be intoxicated and appeared to be in a good mood. According to the officers who were present, "he was smiling and joking...." Lamczyk was placed in the south receiving cell rather than in a regular jail cell because there were no bunks open in the cell block and it was standard procedure to place someone who had been drinking in a receiving cell. The south receiving cell was approximately 25 feet from the jailer behind two locked doors.

At approximately 9:15 A.M., Lamczyk pounded on his door and told the deputy that he was in pain and wanted to be taken to the emergency room. The deputy determined the situation was not life threatening and told him a nurse would be called. Lamczyk appeared to be satisfied with this response and the deputy went back called the nurse. The nurse stated she would come to the jail as soon as she was finished with her other appointments. At approximately 11:00 A.M., Lamczyk again complained of pain. The deputy told him the nurse would be coming and asked if someone else could bring him his medication. Lamczyk said there was not. At about 11:45 A.M. Lamczyk was given lunch at which time he was observed lying on the bunk in his cell. At approximately 12:40 P.M. one of the deputies brought Lamczyk's attorney to the cell to meet with him, at which time they discovered Lamczyk hanging above the toilet in the northwest corner of the cell. He had used his bed sheet to hang himself.

It was later discovered that Lamczyk had attempted suicide while incarcerated in the Shawano County Jail on January 10, 1986. None of the defendants in this action, however, had actual knowledge of this attempt. In fact, Lamczyk had been incarcerated ten times in the Shawano County Jail since the attempted suicide and at no time since January 10, 1986, did he attempt suicide again.

The plaintiffs seek relief under two causes of action. First, they contend that Shawano County established a policy and permitted a custom of improperly training their jailers in suicide detection and prevention. This policy was one of deliberate indifference to the injuries and medical needs of detainees in the Shawano County jail. Second, the plaintiffs contend that each of the individual defendants took actions which they knew or reasonably should have known within their sphere of official capacities violated the Constitutional rights of Peter Lamczyk.

## SUMMARY JUDGMENT STANDARDS

■ Federal Rule of Civil Procedure 56(c) provides that a party moving for summary judgment must show that all pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, present no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *McGraw–Edison Company v. Walt Disney Productions*, 787 F.2d 1163, 1167 (7th Cir.1986). When the nonmoving party is faced with a properly supported motion for summary judgment, the nonmovant may not avoid judgment by resting on his pleadings. If the nonmovant bears the burden of proof on an issue at trial, there must be an affirmative showing, with specific references, that a genuine issue of fact exists requiring a trial. *See First National Bank of Cicero v. Lewco Securities Corporation*, 860 F.2d 1407, 1411 (7th Cir.1988).

■ A "genuine" factual issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party. *See*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The summary judgment procedure is not meant to be a trial based upon affidavits. "Credibility determinations, the weighing of evidence, the drawing of legitimate inferences from the facts are jury functions, not those of the judge.... The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.,* at 255, 106 S.Ct., at 2513. At the summary judgment stage of a proceeding the trial judge's function is to determine whether there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See First National Bank of Arizona v. Cities Service Company,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). This inquiry implicates the substantive evidentiary standard of proof that would apply at a trial on the merits. Thus, in a civil case the record must show that a jury could find by a preponderance of the evidence that the party with the burden of proof is entitled to a verdict in his favor.

*See Anderson,* 477 U.S., at 252, 106 S.Ct., at 2512. If the nonmovant's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Id.,* at 249–250, 106 S.Ct., at 2510–11.

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.,* at 248, 106 S.Ct., at 2510. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of production at trial." *Celotex,* 477 U.S., at 322, 106 S.Ct., at 2552.

■ The record does not show any material facts in dispute.[3] Thus, summary

---

**3.** In their Opposing Brief, the plaintiffs alleged several facts that they suggest create a triable issue. First, they alleged that after Lamczyk's first suicide attempt in 1986, Akina Hinkfuss, then his wife, warned a prison official that Lamczyk had threatened to kill himself again. Second, the plaintiffs allege that Lamczyk's requests for medical attention before the suicide in 1989 were much more urgent than the defendants contend. Third, the plaintiffs allege that the jailers should have known that Lamczyk's use of alcohol and valium before his suicide was "explosive and [created] a potentially suicidal situation." *See,* Plaintiff's Reply Brief, at 23.

These allegations do not raise a triable issue. First, Akina Hinkfuss cannot identify the jailer who had been warned of Lamczyk's suicide threats. Nor has there been an effort by the plaintiff's to identify this jailer and have him deposed. Second, the allegation that Lamczyk was screaming for medical attention is founded upon no affidavit or deposition. Akina Hinkfuss heard that Lamczyk was screaming for medical attention from Lamczyk's mother, who, in turn, heard it from Preston House, an inmate, at Shawano County Jail on September 13, 1989. Mr. House has not been deposed. Similarly, Daniel Hinkfuss' testimony that Lamczyk was yelling for medical attention is unfounded in that it is based upon information gained from an inmate, Wilbert Peters, who has not been deposed. Mr. Peter's written statement in the jail on September 13, 1989, says nothing about Lamczyk being in pain or distress.

The proper ground for excluding affidavits is that witnesses who are not expert witnesses—and these affiants were not—are permitted to testify only from their personal knowledge. Testimony about matters outside their personal knowledge is not admissible, and if it is not admissible at trial neither is it admissible in an affidavit used to support or resist the grant of summary judgement. Fed.R.Civ.P. 56(e). *Visser v. Packer Engineering Associates, Inc.,* 924 F.2d 655 (7th Cir.1991).

Third, the plaintiff's allegation that valium and alcohol create a "suicidal situation" is founded upon testimony of Frank Donley. The record does not show Mr. Donley's qualifications to offer such testimony, nor is there evidence suggesting that Lamczyk consumed anything but beer prior to his arrest on September 13, 1989. Further, assuming that Mr. Donley was qualified to offer testimony about the effect of alcohol and valium on a prisoner, since much of his testimony amounts to conclusory opinion, it does not satisfy the admissibility requirements of 56(e), Fed.R.Civ.P.

An "opinion has a significance proportioned to the sources that sustain it." *Petrogradsky Mejdunarodny Kommerchesky Bank v. National City Bank,* 253 N.Y. 23, 25 [170 N.E. 479] (1930) (Cardozo, J.) ... an expert's declaration, full of assertions, but empty of facts and reasons, won't get a case past a motion for summary judgment, for the judge must "look behind [the expert's] ultimate conclusion ...

judgment may be granted if the defendants are entitled to judgment as a matter of law.

## DISCUSSION

### I. 42 U.S.C. § 1983 AND SHAWANO COUNTY

#### A. Overview

42 U.S.C. § 1983, the governing law in this case, provides that:

Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or any immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To prevail under § 1983, the plaintiffs must show that (1) Mr. Lamczyk held a Constitutionally protected right; (2) he was deprived of this right in violation of the Constitution; (3) the defendants caused this deprivation; and (4) the defendants acted under the color of state law.[4] *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir. 1988). *See also, Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).[5]

■ First, the plaintiffs file suit against the named defendants in their official capacities which makes this a claim against the governmental unit of Shawano County. Although the doctrine of *respondeat superior* is inapplicable to § 1983 action, a county may be held liable for its official policies. *Monell, et al. v. Dept of Social Services of the City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Surplus Store and Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 790 (7th Cir.1991); *Erwin v. City of Manitowoc*, 872 F.2d 1292, 1297 (7th Cir. 1989). The plaintiffs must show that the facts of this case support that Mr. Lamczyk was deprived of his pre-trial detainee rights to be free from any form of punishment under the Due Process Clause of the Fourteenth Amendment. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983); *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979).

The Seventh Circuit has analyzed the "three different parts of the Bill of Rights [that] apply in sequence during arrest and confinement."

■ Force during arrest must be reasonable within the

meaning of the Fourth Amendment; between arrest and conviction the government may not "punish" the suspect without due process of law; after conviction the government may not inflict cruel and unusual punishment.

*Titran v. Ackman*, 893 F.2d 145, 147 (7th Cir.1990). Lamczyk was a pretrial detainee, and thus could not have been "punished"[6] without due process of law. The

---

and analyze the adequacy of its foundation." *Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823, 829–832 (D.C.Cir.1988) *Mid–State Fertilizer v. Exchange Nat. Bank*, 877 F.2d 1333, 1339 (7th Cir.1989).

**4.** The defendants do not contest that they were acting under the color of state law.

**5.** [I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Id.*

**6.** The rights of pretrial detainees are analyzed under the due process clause rather than the Eighth Amendment because the pretrial detainee's innocence or guilt has not been adjudicated. *Bell v. Wolfish*, 441 U.S., at 535, 99 S.Ct., at 1871; *Martin v. Tyson*, 845 F.2d 1451, 1458, *cert. denied*, 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988). In the instant case, the "punishment" alleged is not excessive force or hardship, both of which might violate the due process clause. Instead, the punishment is the alleged

plaintiffs may, then, prevail in their action against Shawano County for damages if Shawano County established a policy or permitted a custom that deprived Mr. Lamczyk of a constitutional right to be free from punishment without due process of law. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. Further, the plaintiffs must show "an affirmative link between the governmental policy and the specific constitutional violation alleged." *Erwin*, 872 F.2d, at 1297. "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable under § 1983." *Springfield, Mass. v. Kibbe*, 480 U.S. 257, 267, 107 S.Ct. 1114, 1119, 94 L.Ed.2d 293 (1987) (O'Connor, J., dissenting) (quoting *Monell*, 436 U.S., at 694, 98 S.Ct., at 2037).

The Supreme Court has held that deliberate indifference by prison officials to any serious medical need or injury of a detainee constitutes punishment without due process of law. *City of Revere*, 463 U.S. at 244, 103 S.Ct. at 2983; *Estelle v. Gamble*, 429 U.S. 97, 104–106, 97 S.Ct. 285, 291–292, 50 L.Ed.2d 251 (1976). Thus, the plaintiffs must show that Shawano County established a policy or permitted a custom of deliberate indifference to the medical needs or injuries of detainees in the Shawano County Jail. The plaintiffs contend that Shawano County violated its affirmative obligation of providing medical treatment to its pretrial detainees. *City of Revere*, 463 U.S. at 244, 103 S.Ct. at 2983. To show "deliberate indifference" the plaintiffs must prove that the prison officials' conduct was deliberate or indifferent in a criminal sense.[7] *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir.1990); *Goka v. Bobbitt*, 862 F.2d 646, 650 (7th Cir.1988).

The plaintiffs argue that Shawano County established a policy and custom of not training its jailers properly in three areas: processing of detainees; responding to emergency requests for medical attention; and surveillance of detainees. This established policy, the plaintiff's contend, evidenced deliberate indifference on the part of Shawano County to the Constitutional rights of Lamczyk.

In *City of Canton v. Harris*, the Supreme Court held that under "limited circumstances",

The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact.

489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). In *Harris*, the respondent commenced an action against the City of Canton and its officials. The respondent sought to hold the city liable under § 1983 for its violation of the respondent's right, under the Due Process Clause of the Fourteenth Amendment, to receive necessary medical attention while in police custody. *Id.*, 109 S.Ct. at 1201. At trial, evidence suggested that, pursuant to municipal regulations, shift commanders were authorized and had discretion to determine whether a detainee required medical care. Testimony also suggested that Canton shift commanders were not provided with any special training to make a determination when to summon medical care for an injured detainee. *Id.* The district court allowed Harris' "failure to train" claim to be submitted to the jury, holding that "a municipality is liable for failure to train its police force, [where] the plaintiff ... prove[s] that the

failure of Shawano County to prevent Lamczyk's suicide. *See, City of Revere*, 463 U.S., at 244, 103 S.Ct., at 2983.

7. The 7th Circuit quoted the Model Penal Code to explain "deliberate or indifferent in a criminal sense":

"A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or

will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." Model Penal Code § 2.20(2)(c). *See also Duckworth v. Franzen*, 780 F.2d 645, 652–53 (7th Cir.1985), *cert denied*, 479 U.S. 816, 107 S.Ct. 71.[,] 93 L.Ed.2d 28 (1986).

municipality acted recklessly, intentionally, or with gross negligence." *Id.* The Sixth Circuit Court of Appeals affirmed, holding, in addition, that, to prevail, the plaintiff must prove "that the lack of training was so reckless or grossly negligent that deprivations of persons' constitutional rights were substantially certain to result." *Id.* The Supreme Court remanded the case to the Court of Appeals to determine whether the respondent should have an opportunity to prove her case under the "deliberate indifference rule." *Id.,* at 1207.

 As in *Monell,* the Supreme Court said that,

[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question of whether there is a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.

*Id.,* at 1203. The standard in determining whether there is a direct causal link is not to ask whether "the policy in question [is] itself unconstitutional." *Id.* Nor would the municipality be liable "if one of its employees happened to apply the policy in an unconstitutional manner" since *respondeat superior* is not applicable. *Id.* Nor is the standard that the municipality acted "recklessly, intentionally, or with gross negligence." *Id.,* at 1201. Instead, the issue is "whether such inadequate training can justifiably be said to represent 'city policy' ...

that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."

*Id.,* at 1205. Finally, "focus must be on the adequacy of the training program in relation to the tasks that the particular officers must perform." *Id.,* at 1205–1206.

This standard of proof, however, is a severe one. As the Court said, "a lesser standard of fault [for municipalities] would result in *de facto respondeat superior* liability on municipalities ... [i]t would also

engage federal courts in an endless exercise of second-guessing municipal training programs ... an exercise ... the federal courts are ill-suited to undertake." *Id.,* at 1206. The court will now proceed to consider the various aspects of training.

**B. Book-in Procedure**

 The plaintiffs argue that Shawano County did not train its jailers to retrieve past records of repeat detainees, nor how to review the past records once retrieved. Had the jailers been trained to retrieve and properly review the past records, the plaintiffs argue that Deputy Tuma would have noticed that Lamczyk had attempted suicide in the County jail once before. Consequently, Deputy Tuma would have taken extra measures to ensure that Lamczyk would not commit suicide on September 13, 1989. Deputy Tuma pulled Lamczyk's master file, but does not recall seeing the notation on the file of Lamczyk's previous suicide attempt. (*See,* Deposition of Thomas Tuma, at 28).

The plaintiffs offer nothing to suggest that there was a custom or a regulation telling jailers that they need not pull the master files of repeat detainees. Nor do the plaintiffs show that the failure of Deputy Tuma to detect the previous suicide attempt was linked to, or directly caused by, the policies or customs of Shawano County Jail. The official procedures of the County Jail require that jailers on duty retrieve the master files during the intake process. (*See,* Deposition of William Mott, at 22; Deposition of Scott Stimpson, at 33). If Deputy Tuma failed to do so during Lamczyk's book-in on September 13, at the most this failure constitutes negligence.

The plaintiffs concede suicide screening forms existed in the Shawano County Jail, but argue that "no policy or procedure existed as to when the jailer should complete the forms." Plaintiff's Brief in Opposition, at 22. Moreover, the plaintiffs argue that even if there was a procedure telling jailers when to complete the suicide screening forms, the jailers were so inadequately trained about suicide prevention and detection that the procedure would have been futile. Specifically, the plain-

tiffs argue that the jailers should have been required to read scholarly articles about jails and suicide to assist them in dealing with potential suicide risks. The plaintiffs do not argue that Wisconsin statutes or administrative rules require that jailers have extensive training in suicide prevention. Nor do the plaintiffs argue that the jailers' training violated an existing statute or rule. Absent any such showing, either arguing that existing statute or rules are unconstitutional or that Shawano County violated Wisconsin law, the court does not think that there has been a showing by the plaintiffs of a policy of deliberate indifference as to the training programs of the Shawano county jail for suicide prevention. Alternatively, if the plaintiff's argument is that the receiving officer, Deputy Tuma, was inadequately trained, such a showing would still not rise to the level of a policy by Shawano County of deliberate indifference. Under *Harris,* the mistakes or negligence of Municipal employees do not give rise to the level of a municipal policy of deliberate indifference. Nor is the municipality deliberately indifferent if a single employee is inadequately trained. The facts of this case must show a *policy* or *custom* of deliberate indifference, rather than alleging individual incompetence or negligence. *Harris,* 489 U.S., at 391, 109 S.Ct., at 1206.

### C. Medical Attention

■ The plaintiffs argue next that Shawano County had an established policy of deliberate indifference to the right of detainees to medical attention. This policy is evidenced in the lack of training of the jailers in responding to the medical needs of detainees. On two occasions, Lamczyk pounded on his cell door to get the attention of the jailers. The jailers responded to Lamczyk's pounding each time. Both times Lamczyk asked the respective jailer to send him to the emergency room because of his pain. Specifically, the plaintiffs argue that the jailers mis-characterized Lamczyk's request for medical attention as not life-threatening. The failure to recognize the severity of Lamczyk's medical condition caused Lamczyk more pain

and his inevitable suicide. In turn, the jailers mischaracterized Lamczyk's medical condition because of their lack of training in recognizing health problems in detainees.

The policy of the Shawano County jail is to refer all regular requests for medical attention to the County Nurse. The County Nurse then interviews the inmate to determine the inmate's condition. Medical emergencies are immediately taken to the County Hospital. The jailers decide whether the detainee's request requires emergency attention. The plaintiffs sole challenge is that the jailers were not adequately trained to make these determinations and that Shawano County, therefore, established a policy of deliberate indifference to the medical needs of detainees.

First, the plaintiffs have not argued that Shawano County's policy of giving jailers discretion in determining the medical conditions and needs of detainees is one of deliberate indifference. Second, the jailers' failure to provide Lamczyk with emergency medical attention does not show that the jailers were so inadequately trained pursuant to policies or customs of Shawano County that Shawano County was deliberately indifferent to the medical needs of Lamczyk. Lamczyk's voice did not have a demanding tone, but was, instead, calm. Lamczyk's requests for medical attention were not specific or urgent. Rather, the requests were general statements that Lamczyk was not feeling well and in pain. These statements did not indicate to the jailers and others present at the time that Lamczyk was under duress or in need of immediate attention. Finally, Lamczyk seemed satisfied with the jailer's response after each request. Under these facts, the jailers' failure to provide immediate attention does not reflect any improper or inadequate training of the jailers. Even more removed, these facts do not evidence any policy by Shawano County that would indicate deliberate indifference to the medical needs of Lamczyk.

### D. Surveillance

■ The plaintiffs argue that Shawano County had a policy of not keeping a watch

over detainees. Shawano County's failure to mandate any policy or procedure of surveillance of detainees was one of deliberate indifference. The plaintiffs contend, specifically, that the jailers failed to record surveillance rounds in a log book. Without any record of a surveillance round, the plaintiffs infer that the jailers did not check up on Lamczyk until they found him dead.[8]

Shawano County had a procedure for making surveillance rounds of the jail every hour. If the inmate was considered a suicide risk, the jailer would make rounds every fifteen minutes. However, whether the jailer violated this procedure does not give rise to any liability on the part of Shawano County. Under *Harris*, the failure or negligence of an employee of "an otherwise sound program" does not rise to the level of a policy by Shawano County evincing deliberate indifference. *Id.*, 109 S.Ct. at 1206.

## II. 42 U.S.C. § 1983 AND THE INDIVIDUAL DEFENDANTS

### A. Qualified Immunity

■ The plaintiffs seek relief against the defendants, Schardt, Krueger, Mott, and Tuma, in their individual capacities. The defendants argue that this cause of action must fail because the defendants enjoy qualified immunity from suit. In *Harlow v. Fitzgerald*, the Supreme Court held that:

> [g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982). *See also, Santiago v. Lane*, 894 F.2d 218, 225 (1990). In *Harlow*, the Supreme Court said that qualified or "good faith" immunity is an affirmative defense that "must be pleaded by a defendant official." *Harlow*, 457 U.S., at 815,

102 S.Ct. at 2737. This defense has both an "objective" and a "subjective" component. The objective element "involves a presumptive knowledge of and respect for 'basic, unquestioned constitutional rights.'" *Id., citing Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). The subjective element refers to 'permissible intentions.' *Id.* The Court then held that:

> qualified immunity would be defeated if an official *"knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury ..."

*Id.* (emphasis in text). However, "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Id.* Consequently, the emphasis is on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law ..." in determining whether the official's conduct violated an individual's constitutional rights. *Id.*

■ Once the issue of qualified immunity is properly injected in a case by a motion for summary judgment, the plaintiff bears the burden of showing that a "clearly established" constitutional right exists. *See, Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Alvarado v. Picur*, 859 F.2d 448, 452 (7th Cir.1988); *Abel v. Miller*, 824 F.2d 1522, 1534 (7th Cir.1987). To meet this burden the plaintiff must show the existence of a right sufficiently particularized to have put the potential defendants on notice that their conduct was likely unlawful at the time of the alleged offense. *See, Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The court focusses, then, on two issues. First, whether there is a clearly established

---

**8.** The plaintiff's inference is not supported by the record. The jailers visited Lamczyk at least twice in response to his request for medical attention. Further, the jailers testified that they visited Lamczyk to serve him breakfast and lunch.

statutory or constitutional right of a detainee to be protected from committing suicide. *See, Mitchell v. Forsyth,* 472 U.S., at 528, 105 S.Ct., at 2816 (holding that once a defendant advances a defense of qualified immunity, summary judgment may be granted unless "the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions.") *See, also, Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 1793, 1794, 114 L.Ed.2d 277 (1991). Second, if such a right is clearly established, the court asks whether the named defendants violated that right.

 The court has found no Supreme Court or Seventh Circuit authority which holds that there is an explicit constitutional right to be protected from suicide. *See, State Bank of St. Charles v. Camic,* 712 F.2d 1140, 1145 (7th Cir.), *cert denied,* 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983). However, a pre-trial detainee does have a due process right to be free from punishment.[9] This right is violated if the prisoner's custodians exhibit deliberate indifference to the medical needs of the prisoner. *City of Revere,* 463 U.S., at 244, 103 S.Ct., at 2983 *See, also, Estelle,* 429 U.S., at 104–106, 97 S.Ct., at 291–292. A complaint that an individual defendant was negligent in failing to recognize an inmate's suicidal tendencies does not rise to the level of a valid claim of mistreatment. *Id.* The standard of deliberate indifference applied in *Estelle* to violations of an inmate's medical needs applies also to inmate suicides. *Camic,* 712 F.2d, at 1146. "The deliberate indifference standard is met only if there was a 'strong likelihood rather than a mere possibility,' that self-infliction of harm would result." *Edwards v. Gilbert,* 867 F.2d 1271, 1276 (11th Cir.1989) (*citing, Camic,* 712 F.2d, at 1146.) The defendants, then, are successful in their qualified immunity defense only if their conduct did not exhibit deliberate indifference to Lamczyk's medical needs, and if the

likelihood that Lamczyk would commit suicide was not a strong likelihood.

 First, the court sees nothing on the record which might indicate that the conduct of the jailers was deliberately indifferent to the medical needs of Lamczyk. On both of his requests for medical attention, the jailers responded through normal channels. They approached Lamczyk in his cell, asked him what he needed, and answered that the County Nurse would see Lamczyk as soon as she was able. The jailers also asked whether there was anyone who could bring Lamczyk his medication. The fact that they did not characterize Lamczyk's request for medical attention as an emergency also does not rise to the level of deliberate indifference. Nothing in the manner of Lamczyk's request could indicate to the jailers that he was in a dire condition and required immediate medical attention.

Second, there is nothing on the record to indicate a strong likelihood that Lamczyk would commit suicide. Lamczyk's previous suicide attempt was known to none of the jailers. Their failure to review Lamczyk's master file might constitute negligence on their part, but, again, does not rise to the level of deliberate indifference to the rights of Lamczyk. Lamczyk had been incarcerated in the jail on ten occasions after his suicide attempt, and on none of these occasions had he indicated to anyone in his conduct or communication that he was a suicide risk. Rather, the jailers who did know Lamczyk from past experiences testified that he had a history of good behavior while incarcerated. In the early morning hours of September 13, 1989, Lamczyk was in good humor during the book-in. His requests for medical attention later in the day gave no indication that he was contemplating or likely to commit suicide. Given these facts, the jailers could not be expected to think that there was a strong likelihood that Lamczyk would commit suicide.

---

**9.** Although the Eighth Amendment protection against cruel and unusual punishment applied only to convicted prisoners (*Whitley v. Albers,* 475 U.S. 312, 318, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986), the Supreme Court has stat-

ed that "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." *Bell v. Wolfish,* 441 U.S., at 545, 99 S.Ct., at 1877.

## CONCLUSION

For the reasons stated above, it is OR-DERED that the Defendants' Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter judgment as a separate document which shall provide that judgment is entered in favor of the defendants and against the plaintiffs.

Done and Ordered.