116 F.3d 1483
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Sidney WILSON, Plaintiff-Appellant, v.
Glen GIPSON, Alfred HUNT, and Charles WRIGHT, Defendants-Appellees.
 No. 96-2224.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 28, 1997*
Decided June 4, 1997
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division, No. 3:94-cv-891-RP; Robin D. Pierce, Magistrate Judge.
 Before CUMMINGS, EASTERBROOK, and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Sidney Wilson, a state prisoner, filed a pro se complaint pursuant to 42 U.S.C. § 1983, alleging constitutional and state law violations. Wilson claimed that prison officials routinely marked books and other publications sent to him with a black marker. According to Wilson, several sellers of these publications had declared that they would not give refunds for items that were marked. Wilson also alleged that, at various times, the prison did not allow prisoners to purchase textbooks or law books, to retrieve small books such as paperbacks once they were stored in the property room, or to possess books larger than 7 by 10 inches. Moreover, the prison limited the number of books and publications that a prisoner may have in his cell or may keep in the prison. All of these practices were alleged to violate the First and Eighth Amendments, and the marking of publications was claimed to be a deprivation of property without due process.
 
 
 2
 The defendants moved for judgment on the pleadings, arguing that the marking of incoming publications did not violate Wilson's constitutional rights. The district court granted the defendants' motion, and entered judgment. Wilson appeals.
 
 
 3
 Wilson's first argument is that the district court refused to accept his motion for summary judgment even though it had granted him an enlargement of time to do so. Wilson clearly misreads the record on this matter. The district court had set the deadline for filing of dispositive motions for January 3, 1996. January 3 came and went without a motion from Wilson, as did January 15, which was the deadline set for a dispositive motion by the defendants after they had moved for an enlargement of time. On January 19, the district court granted Wilson an extension of time to February 19 to file his response to the motion for judgment on the pleadings, but gave no indication that he could use that time to file his own dispositive motion. Thus Wilson's motion for summary judgment, submitted on February 19, came more than a month after the deadline for such motions, and the district court acted appropriately in refusing to accept it.
 
 
 4
 The remainder of Wilson's contentions relates to the judgment on the pleadings. He argues that the marking of publications infringes on his First Amendment rights. The contention in his complaint is that the marking discourages him from purchasing books, because once the books arrive, he loses any opportunity to return them for a refund. In other words, he is allegedly less willing to order (and thus have the opportunity to consider reading) a book if he knows he cannot return it.
 
 
 5
 Assuming that the practice of marking thereby does impinge on his First Amendment rights, Wilson nevertheless fails to state a viable claim. The defendants asserted in their motion for judgment on the pleadings that marking books with a prisoner's name and identification number serves "a legitimate security interest in making sure that inmates' personal property is identified, thus deterring theft and misuse of mail order privileges." Wilson responds that this was not the defendants' real purpose. He points to statements by prison officials that the practice was meant to deter prisoners from "cadillac [k]ing" publications to each other, and asserts that books such as his 2000-page dictionary are "impossible to send" to other prisoners. It is implicit in the statements to which Wilson points, and confirmed by references in cases, that "cadillacking" is an unauthorized method of transporting items from one prisoner to another. See Hosna v. Groose, 80 F.3d 298, 302 (8th Cir.1996) (describing "Cadillacs" in prison context), cert. denied, 117 S.Ct. 164 (1996); Taifa v. Bayh, 1995 WL 646300, at * 12, * 25 n. 3 (N.D.Ind. Aug. 22, 1995) (unpub.order) (describing "cadillacking" in prison context). It takes little imagination to recognize that "cadillacking" could result in theft (when prisoners keep "cadillacked" books without permission of the owner) and misuse of mail privileges (when prisoners "cadillac" their books to other prisoners and then claim that they are entitled to order more books), the two security problems identified by the defendants. Even if some books are difficult to transport, for instance because of their size, that does not mean that prison officials are acting unreasonably in guarding against the possibility of "cadillacking."
 
 
 6
 A prison's practice that might infringe on a prisoner's right to receive incoming publications is nevertheless valid under the First Amendment if it is "reasonably related" to the "legitimate penological interests" asserted by the defendants. See Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78, 89-91 (1987). As shown by the analysis in the previous paragraph, that is the case here. Alternative practices proposed by Wilson do not undermine this conclusion. First, he suggests that officials could tape a piece of paper with the inmate's name and identification number onto the publication. Yet, if the paper were taped so that it could not be removed, then Wilson would be in the same position as if the publication were marked with indelible ink. If the paper were taped less securely, then a prisoner could simply remove it. Either way, the alternative practice would not "fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." Thornburgh, 490 U.S. at 418; Turner, 482 U.S. at 91. Wilson also suggests that the defendants already meet their asserted interests by storing the names of publications and the prisoners to whom the publications belong in a computer. However, it is likely that on some occasions, two or more prisoners will own or possess identical publications, thus creating confusion as to which prisoner is entitled to which copy. Again, Wilson has failed to identify an "obvious, easy alternative[ ]" to the reasonable practice of marking. Thornburgh, 490 U.S. at 418; Turner, 482 U.S. at 90-91.
 
 
 7
 Wilson next argues that the marking of incoming books, by preventing him from receiving refunds for returned books, deprived him of property without due process. However, Turner, supra, established a broad rule that "a prison regulation [that] impinges on inmates' constitutional rights ... is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. This rule "applies to all circumstances in which the needs of prison administration implicate constitutional rights." Washington v. Harper, 494 U.S. 210, 224 (1990) (citing Turner, 482 U.S. at 85, 89). Thus, Wilson's due process claim must fail for the same reasons that the First Amendment claim fails.
 
 
 8
 On appeal, Wilson does not challenge the dismissal of his attempted Eighth Amendment or state law claims. However, in addition to repeating his arguments concerning the marking of incoming publications, he reiterates the other alleged First Amendment violations presented in his complaint: that the prison at times did not allow prisoners to purchase textbooks or law books, to retrieve small books such as paperbacks once they were stored in the property room, or to possess books larger than 7 by 10 inches, and limited the number of books and publications that a prisoner may have in his cell or may keep in the prison.
 
 
 9
 The defendants have not acknowledged that Wilson made other allegations beyond those related to marking. Both in their answer and motion for judgment on the pleadings, they discuss only issues concerning marking. In the responses to both of these submissions, Wilson focused on those same issues. The district court did likewise. Yet the district court granted judgment to the defendants on the entire complaint, which clearly attempts to raise additional claims.
 
 
 10
 The dismissal of these claims without notice and opportunity to be heard, and moreover without explanation, was improper. See Ricketts v. Midwest Nat'l Bank, 874 F.2d 1177, 1183-85 (7th Cir.1989); Shockley v. Jones, 823 F.2d 1068, 1072-73 (7th Cir.1987). We should vacate the dismissal of these claims and remand for further proceedings unless a remand would be futile. See id. at 1073.
 
 
 11
 Each of the practices alleged by Wilson (except for marking, as previously discussed) does appear to have an impact on First Amendment rights. In sum, prisoners were allegedly not allowed to order or to keep certain publications. Wilson's complaint is unclear whether these alleged practices affected him in any way. He claims that "prisoners" were not allowed certain kinds or amounts of publications, but does not explicitly say whether he in particular was kept from receiving or reading publications as a result. This raises doubt as to whether Wilson has standing to pursue these claims. With respect to these claims, Wilson should be permitted to amend his complaint (pursuant to Fed.R.Civ.P. 15(a)) to indicate whether he suffered or was in imminent danger of suffering any loss of reading opportunities from the alleged policies. Cf. Schiffels v. Kemper Financial Serv., Inc., 978 F.2d 344, 353-54 (7th Cir.1992) (remanding case so that plaintiff could amend complaint to show standing).
 
 
 12
 The defendants have not attempted to explain the reasons for the alleged practices. If the denial of Wilson's access to publications was arbitrary, he would have a viable claim. Antonelli v. Sheahan, 81 F.3d 1422, 1433 (7th Cir.1996) (quoting Martin v. Tyson, 845 F.2d 1451, 1454 (7th Cir.) (per curiam), cert. denied, 488 U.S. 863 (1988)). The defendants may have valid justifications for the practices, or may have other arguments why Wilson has failed to state a claim. The defendants should present such arguments in the first instance to the district court, if they so choose, and Wilson should be allowed to respond to them. See id.; Martin, 845 F.2d at 1454-55.
 
 
 13
 The judgment is VACATED and REMANDED as to the First Amendment claims not discussed in the district court's final order, and AFFIRMED in all other respects.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34. (f)