**Billy B. TUCKER, Plaintiff–Appellant,**

v.

**Sheriff RANDALL and Lieutenant Speenburg, Defendants– Appellees.**

No. 89–2812.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1991.

Decided Nov. 22, 1991.

Jerold S. Solovy, C. John Koch, Conor D. McAuliffe (argued), Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Charles E. Hervas, James G. Sotos, James R. Schirott, Patrick K. Bond (argued), Phillip A. Luetkehans, Schirott & Associates, Itasca, Ill., for defendant-appellee.

Before CUMMINGS, COFFEY and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Billy B. Tucker is confined in the Pontiac Correctional Center in Pontiac, Illinois. In August 1988 he filed a two-count *pro se* complaint under 42 U.S.C. § 1983 against Sheriff Richard Randall and Lieutenant Albert Speenburg, officers of the Kendall County, Illinois jail. Judge Marovich dismissed plaintiff's complaint in August 1989 "for failure of plaintiff to respond to briefing schedule set up on defendants' motion to dismiss." Plaintiff claims that the district court erred in dismissing his complaint without ruling on his pending request for appointment of counsel. Plaintiff also asserts that it was error for the court to dismiss his entire complaint when the pending motion to dismiss was directed only to one of the two counts of the complaint.

## I. FACTS

According to Count I of the complaint, plaintiff was arrested between 8:30 and 9:00 P.M. on November 9, 1986 after a physical altercation at "T's TAP" in Plano, Illinois.[1] After his arrest, plaintiff was taken to a hospital, where blood was washed from his face but no x-rays were taken of his broken right hand and broken lower right ribs. During the next four days he was not allowed to telephone anyone or receive any telephone calls. Count I states that jail officials prohibited telephone calls for four days so that they could install wiretaps at the request of the State's Attorney. Thereafter telephone conversations between plaintiff and his wife and brother were taped, according to the Kendall County Public Defender who was then representing plaintiff. The withholding and monitoring of the telephone calls allegedly violated plaintiff's rights under the Fourth and Fourteenth Amendments.

---

1. Plaintiff was ultimately convicted of murder in connection with the altercation at T's TAP. In his *pro se* brief, plaintiff attaches a letter from the Kendall County jail chaplain. According to the jail chaplain, one of the patrons in the bar, a known brawler unnamed by the chaplain, was fighting with plaintiff in the bar and was trying to take a gun from plaintiff when the gun went off three times. Apparently the first shot killed a patron in the bar. The chaplain attended Tucker's trial and sentencing, which he described as a travesty of justice (Plaintiff's *pro se* App. A–8). The chaplain also stated that Tucker's complaints about his treatment at Kendall County Jail were justified and concurred in by other witnesses (*id.* at A–9).

According to Count II, in November, one day after plaintiff complained about the wiretaps, he was placed in solitary confinement without any heat or shaving razor. He requested treatment for his lower right ribs and mangled right hand but defendants refused to take him to a doctor. While in solitary confinement he lost 40 pounds because of insufficient food. After 67 days the jail chaplain told defendants that he would complain to the newspapers on plaintiff's behalf unless they removed him from solitary confinement, gave him a razor and took him to a doctor. Plaintiff was then taken to a pediatrician, who said that plaintiff's ribs and mangled hand required a bone specialist and therefore he could not treat them. As a result, plaintiff's right hand is too mangled to be of practical use and his lower right ribs protrude an inch from his rib cage. He received no medical treatment for those injuries during his 9½ months' incarceration in the Kendall County jail. Plaintiff alleges that these actions constitute cruel and unusual punishment, denial of due process, and denial of equal protection in violation of the Eighth and Fourteenth Amendments.

Plaintiff filed a motion for appointment of counsel on November 7, 1988, less than three months after filing his complaint. On February 2, 1989, defendants filed a motion to dismiss Count I of plaintiff's claim, relating to denial of access to and wiretapping of the telephone. The trial judge established a briefing schedule for this motion on the same day. When plaintiff did not follow this schedule, the court dismissed plaintiff's action in its entirety on August 8, 1989. The court had not ruled on plaintiff's pending motion for appointment of counsel, and had not responded to a letter filed July 10, 1989 in which plaintiff requested a ruling on his appointment of counsel motion.[2]

## II. ANALYSIS

Defendants have simplified our task by conceding that the district court erred on several issues. Defendants acknowledge in their brief that the district court should have first notified plaintiff of the consequences of his failure to comply with the briefing schedule before dismissing the complaint. *Palmer v. City of Decatur*, 814 F.2d 426, 429 (7th Cir.1987); *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir.1985). Defendants also concede that the district court should have ruled on plaintiff's motion for appointment of counsel before dismissal. *Brown–Bey v. United States*, 720 F.2d 467, 471 (7th Cir.1983). Defendants therefore acknowledge that Count II, the medical deprivation count, was improperly dismissed.

Nevertheless, defendants assert that the error in dismissing Count I was harmless on the ground that the denial of access to a telephone until the fourth day and subsequent monitoring of plaintiff's telephone calls were "reasonably related to the legitimate jail concern of security [rather than] a constitutional deprivation" (Response Br. 7–8).

▮ We disagree. In these circumstances, an error is harmless only if it is "beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Ross*, 777 F.2d at 1219. As noted, Count I is based on defendants' refusal to permit plaintiff to use the telephone for four days following his arrest while he was incarcerated as a pre-trial detainee and by later installing a wiretap on his telephone that recorded calls to and from his wife, brother and "anyone else." The taping was allegedly done at the request of the State's Attorney of Kendall County.

▮ Denying a pre-trial detainee access to a telephone for four days would violate the Constitution in certain circumstances. The Sixth Amendment right to counsel would be implicated if plaintiff was not allowed to talk to his lawyer for the

---

**2.** The district court docket sheet clearly reflects plaintiff's November 7, 1988 motion as well as his July 10, 1989 request for a ruling. Neither of these documents appears in the record on appeal, since the district court clerk was unable to locate them. It is possible that Judge Marovich also never had the opportunity to review them.

entire four-day period. *Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 199 (7th Cir.1985); *Strandberg v. City of Helena,* 791 F.2d 744, 747 (9th Cir.1986). In addition, unreasonable restrictions on prisoner's telephone access may also violate the First and Fourteenth Amendments. *Duran v. Elrod,* 542 F.2d 998, 1000 (7th Cir.1976); *Strandberg,* 791 F.2d at 747; *Montana v. Commissioners Court,* 659 F.2d 19, 23 (5th Cir.1981); *Feeley v. Sampson,* 570 F.2d 364, 374 (1st Cir.1978). Plaintiff should have the opportunity of representation by appointed counsel on remand to enable the district court to evaluate whether the four-day delay in this case in permitting the use of a telephone was unconstitutional.

■■■■ Pre-trial "detainees cannot enjoy the full range of freedoms of unincarcerated persons." *Jackson v. Elrod,* 881 F.2d 441, 444 (7th Cir.1989). The use of monitored telephone calls of a pre-trial detainee violates the Constitution in certain circumstances. Count I of plaintiff's *pro se* complaint, viewed liberally as it must be, alleges that all his "private telephone conversations" were monitored at Kendall County jail. This monitoring would apparently include calls to and from the Kendall County Public Defender, his attorney (Plaintiff's App. A–12). Prison officials may tape a prisoner's telephone conversations with an attorney only if such taping does not substantially affect the prisoner's right to confer with counsel. *Dreher v. Sielaff,* 636 F.2d 1141 (7th Cir.1980); see also *Martin v. Tyson,* 845 F.2d 1451, 1458 (7th Cir.1988), certiorari denied, 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133. Clearly, taped attorney-client conversations cannot be used in any fashion unless possibly with prior court authority based on probable cause. Regardless of monitoring, prisoners of course must be permitted to confer with counsel.

The discussion of telephone calls by prisoners in *Martin* does not support defendants. It is true that *Martin* recognized

that reasonable restrictions on telephone access and some monitoring of telephone calls were acceptable because of legitimate concerns regarding prison security. In *Martin,* however, plaintiff was permitted to use the telephone every other day. Calls were monitored only to make sure the prisoner reached a designated person, and there was never any monitoring of the prisoner's legal calls. Here no calls were permitted for four days and thereafter phone conversations were being taped when Tucker was speaking to his wife, brother "or anyone else," presumably including his lawyer (Plaintiff's App. A–12; Plaintiff's *pro se* App. A–4).

■■■■ Plaintiff asks this Court to appoint counsel upon remand.[3] The decision whether to appoint counsel is "a task for which our expertise is as great as the district court's." *Merritt v. Faulkner,* 697 F.2d 761, 766 (7th Cir.1983), certiorari denied, 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366. This decision is based on the following factors: 1) whether the merits of the indigent's claim are colorable; 2) the ability of the indigent plaintiff to investigate crucial facts; 3) whether the nature of the evidence indicates that representation by counsel will more likely expose the truth; 4) the capability of the indigent defendant to present the case; and 5) the complexity of the legal issues presented by the complaint. *Maclin v. Freake,* 650 F.2d 885, 887–889 (7th Cir.1981).

■■■■ An analysis of these factors reveals that appointment of counsel is particularly appropriate in this case. First, plaintiff has presented a colorable claim of deliberate indifference to his serious medical needs. Deliberate nontreatment of broken ribs and a broken hand for 9½ months, resulting in permanent deformities, presents a clear Eighth Amendment violation. Second, plaintiff is unable to investigate crucial facts because he currently is incarcerated in a facility different from that in which the alleged conduct took place. Third, counsel on both sides will

---

**3.** Technically, courts do not "appoint" counsel in § 1983 or other civil cases; they request members of the bar to assist. *DiAngelo v. Illinois Dep't of Public Aid,* 891 F.2d 1260, 1262 (7th Cir.1989). We use the term "appoint" only as shorthand for this recruitment process.

more likely aid the search for truth because a major issue in the case will be conflicting medical evidence. Fourth, it is clear that plaintiff cannot present his case properly. His inartful pleadings both in this Court and the district court, and his inability to follow the briefing schedule below, show the need for counsel. And, finally, numerous complex constitutional issues arising under the First, Sixth, Eighth and Fourteenth Amendments are raised by plaintiff's complaint.

Accordingly, the dismissal of plaintiff's complaint is reversed and remanded with instructions to consider both counts, and the district court shall appoint counsel to represent plaintiff.[4]

4. We commend the efforts of Conor D. McAuliffe, plaintiff's attorney for this appeal, and encourage the district court to request him to continue his able representation.