**Leander CARTER, Ronald Wren, Donald Stroud, Wayne Lemons, Plaintiffs,**

**v.**

**William O'SULLIVAN, Ian Oliver, Jon Heckel, Angela Cross, S. Edwards, John Johnson, Odie Washington, Leo Meyer, Stephen Schnorf, AT & T Communications, Donna Bowen and John Powell, Defendants.**

No. 95–3164.

United States District Court,
C.D. Illinois,
Springfield Division.

April 19, 1996.

Leander Carter, Mt. Sterling, IL, pro se.

Ronald Wren, Mt. Sterling, IL, pro se.

Donald Stroud, Chicago, IL, pro se.

Wayne K. Lemons, Mt. Sterling, IL, pro se.

Edwin L. Durham, Atty. Gen., Springfield, IL, for William D. O'Sullivan, defendant, Odie Washington, defendant, Ian Oliver, defendant, Angela Cross, defendant, John Johnson, defendant, Leo Myer, defendant, Stephen Schnorf, defendant, John Heckel.

Ronald L. Hack, Coburn & Croft, St. Louis, MO, Louis F. Bonacorsi, Bryan Cave L.L.P., St. Louis, MO, for Donna Bowen, John Powell, defendant, AT & T Communications, defendant.

*OPINION*

RICHARD MILLS, District Judge:

This case deals with telephones for inmates in an Illinois prison.

Four state prisoners have brought this civil rights action pursuant to 42 U.S.C. § 1983. They sue correctional officials and telecommunications providers for alleged infringement of the Plaintiffs' First Amendment associational rights and their Sixth Amendment right of access to their attorneys.

More specifically, the Plaintiffs challenge various aspects of the collect-call system recently implemented at the Western Illinois Correctional Center.

Summary judgment will be granted in favor of all Defendants.

### SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Herman v. National Broadcasting Co., Inc.,* 744 F.2d 604, 607 (7th Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359 (7th Cir.1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Disputed facts are ma-

terial only if they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507–08 (7th Cir.1992).

## FACTS

The four Plaintiffs (Leander Carter, Ronald Wren, Donald Stroud and Wayne Lemons) are state prisoners. At the time the Plaintiffs commenced suit, all four were incarcerated at the Western Illinois Correctional Center. Plaintiff Stroud has since been transferred to the Shawnee Correctional Center.

The Defendant William O'Sullivan is the warden of the Western Illinois Correctional Center (hereinafter, "W.I.C.C."). The Defendants Ian Oliver and Jon Heckel are assistant wardens. The Defendant Angela Cross is a telecommunications coordinator at W.I.C.C.[1] The Defendant John Johnson is the prison's business administrator. The Defendants Odie Washington and Leo Meyer are, respectively, the director and deputy director of the Illinois Department of Corrections. The Defendant Stephen Schnorf is the director of the Illinois Department of Central Management Services.

█ The Plaintiffs also sue AT & T Communications and its agents, Donna Bowen and John Powell. Although the AT & T Defendants have not joined in the motion for summary judgment, the Court finds that they, too, are entitled to judgment as a matter of law. Where some, but not all, parties move for summary judgment, the Court on its own motion may grant summary judgment as to non-movants as well if the motion is equally effective in barring the claim against the other defendants and the plaintiff has had an adequate opportunity to argue in opposition to the motion. *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir.1986).

The following facts are uncontested for purposes of this motion: Prior to November 1994, inmates at W.I.C.C. were permitted to make unlimited, operator-assisted collect telephone calls anywhere in the United States. Inmates were not required to provide prison officials with names or telephone numbers of those they were calling.

In November of 1994, W.I.C.C. began using a new collect telephone call system. The new, computerized system provides inmates at W.I.C.C. with telephone access through the use of a personal identification number (or "PIN"). In order to use the telephone system, an inmate must provide prison officials with a list of up to thirty individuals he wishes to call. An inmate may amend his phone list on a weekly basis. Once an inmate provides prison officials with the necessary information (name, telephone number, address and relationship to the inmate) the amendment process takes about two days to complete. Inmates may still make unlimited telephone calls, to anyone on their list.

If an inmate needs to make an emergency telephone call to a person not on his list, and must do so before an amendment can be processed, the inmate may request special arrangements through Clinical Services for placing emergency calls without using the PIN system. (Plaintiff Lemons argues that such an effort would be "futile" because it takes three days to get a response to requests made to Clinical Services; however, there is no allegation that he ever had to make an emergency phone call and was unable to do so.)

All non-attorney telephone calls at W.I.C.C. are subject to monitoring and recording. To ensure that a phone call with an attorney is not monitored or recorded, an inmate must designate who on his phone list is a lawyer. Prison officials verify that persons named as attorneys are members of the Illinois bar, then activate software that prevents the monitoring and recording of calls placed to that number.

W.I.C.C.'s telephone system incorporates a security feature that automatically cuts off

---

1. The U.S. Marshal returned service of summons unexecuted as to S. Edwards, a second telecommunications coordinator at W.I.C.C. The form stated simply, "No longer employed at Western." The court has repeatedly reminded the marshal of his duty to make some efforts to ascertain the whereabouts of a properly identified defendant, *see Graham v. Satkoski*, 51 F.3d 710 (7th Cir. 1995). Here, however, requiring the marshal to file an amended return of service would be a futile exercise, as this case is clearly without constitutional foundation.

inmate telephone calls if the recipient attempts to connect a third party to the conversation. This feature was included to prevent inmates from, among other abuses, circumventing the system to call people who have requested W.I.C.C. to block their telephone number, or with whom W.I.C.C. has blocked communication. (Some people have requested that an inmate not be permitted to call them for personal or "billing-related" reasons; the prison has, on its own initiative, blocked calls with recipients who were "found to be engaging in illegal activity or [who] posed a threat to safety and security" at W.I.C.C. AT & T also employs the cut-off feature "to prevent potential fraud and billing problems.")

An instruction sheet on inmate telephones advises prisoners, among other matters, that:

(1) Called numbers may be blocked due to excessive use, suspicion of fraud, or harassment of called parties.

(2) Customer complaints of telephone harassment will result in the number being blocked. In addition, customers may request that all phone calls from correctional centers be blocked.

(3) If the called party attempts connection to a three way call, or activates call waiting feature during the call, the call will automatically terminate.

When a called party accepts a collect call from W.I.C.C., a recording makes him or her aware that activation of added features such as call-waiting, three-way calling or call transfer will result in disconnection.

The current telephone system requires that an inmate provide a direct dial number for his attorney, as call transfers would activate the cut-off feature. Inmates cannot call attorneys at a toll-free number under the new system. When requested by an inmate, W.I.C.C. officials have contacted attorneys' offices to request a direct dial number. In a few cases, W.I.C.C. has activated an override of the cut-off feature to verified attorneys when no direct dial number existed.

Some of the Plaintiffs' contacts are uncomfortable releasing to prison officials their names, addresses, telephone numbers and the nature of their relationship with the Plaintiffs.

A call by Plaintiff Wren to his attorney was disconnected for no apparent reason on August 2, 1995; the same problem occurred three times on September 11, 1995.

Plaintiff Wren was unable to make an "emergency" phone call to his attorney for nineteen days beginning December 7, 1994. The attorney was not on Wren's phone list. Wren's counselor told the Plaintiff that he could not place the call for him because he had no way of verifying whether the intended call recipient was a licensed attorney. Wren initially resisted filling out an add-change-delete form for his telephone list, but finally completed the form "under duress." Wren had only a toll free number, but the Defendant Cross was able to obtain a non–800 number for the attorney. Wren did not give Cross permission to contact the attorney.

In November and December 1994, Plaintiff Stroud was unable to contact his son's mother because he had failed to provide prison officials with a direct dial number. Stroud also experienced difficulty telephoning family and friends who would not accept his collect calls under Stroud's incarcerated name because they knew him only by his nickname. Some of Lemons' and Stroud's friends and family members have informed the Plaintiffs that they do not want their names and addresses released to W.I.C.C. because the previous long-distance provider, Consolidated Communications, "harassed" them.

Stroud completed four "Trouble Report Forms," indicating that he was unable to place calls to numbers he had added to his phone list. The system administrator would respond within a day. In one case, the cause of the problem was that the Plaintiff had transposed the telephone number on the form. The record does not indicate what caused Stroud's other problem.

Calls by Stroud to a certain telephone number were disconnected "without notice" fourteen times in June and July 1995. W.I.C.C. and AT & T officials investigated the matter, but found "no problem within our system." The Defendant Cross contacted the woman at the number in question to

advise her to obtain a new telephone and see if that would remedy the problem. Stroud had not given Cross permission to contact the woman.

On March 27, 1995, AT & T corporate security placed a block on a telephone number on Stroud's list. The reason provided for the block was "high toll to a new number." AT & T advised the owner of that phone line that a block had been placed, why, and what she needed to do if she wanted the block removed.

Between November of 1994 (when the new phone system was implemented) and October 1995:

Stroud made 904 calls and used 14,348 minutes of phone time;

Carter made 104 calls and used 890 minutes of phone time;

Wren made 21 calls and used 147 minutes of phone time; and

Lemons made 3 calls and used 40 minutes of phone time.

During the time period in question, the Plaintiffs also were able (to the extent permitted by prison rules) to write and to receive letters and visits from family, friends and attorneys.

### DISCUSSION

No material facts are in dispute, and the Court finds that the Defendants are entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the Plaintiffs, no reasonable person could find that the telephone system at W.I.C.C. violates the Plaintiffs' constitutional rights. The Defendants have not unduly infringed upon either the Plaintiffs' right of association, or their right of access to the courts.

Generally, the effective filing of a notice of appeal transfers jurisdiction from the district court to the court of appeals with respect to all matters involved in the appeal. *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 401–02, 74 L.Ed.2d 225 (1982). However, it is a well-recognized exception to the general rule that appeals from an order granting or denying a preliminary injunction do not divest the dis-

trict court of jurisdiction. *See Shevlin v. Schewe,* 809 F.2d 447, 450–51 (7th Cir.1987); *Chrysler Motors Corp. v. International Union,* 909 F.2d 248, 250 (7th Cir.1990).

This Court has, in fact, already certified that the Plaintiffs' pending appeal is frivolous. *See* Order dated December 6, 1995; *McMath v. City of Gary, Ind.,* 976 F.2d 1026, 1030 (7th Cir.1992); *Apostol v. Gallion,* 870 F.2d 1335, 1338–39 (7th Cir.1989). Any appeal of this decision can be consolidated with the appeal of the order denying the Plaintiffs' motion for a preliminary injunction.

The Court should also note at the outset that this case has not been certified as a class action and will not be treated as such. The caption of the complaint indicated that the Plaintiffs were suing "on behalf of all similarly situated and affected" inmates. However, the Plaintiffs have clarified in their brief opposing summary judgment that they do not intend "and have not at any time alleged" that they were maintaining a class action. Because the Plaintiffs do not meet the criteria of Fed.R.Civ.P. 23(a) and because this case cannot survive summary judgment, class certification would be inappropriate.

The Plaintiffs did file a motion for appointment of counsel to investigate the possibility of class certification. Aside from mootness of the class certification issue, there is no indication that the Plaintiffs attempted on their own to retain an attorney prior to seeking court appointment, as required by *Jackson v. County of McLean,* 953 F.2d 1070, 1072 (7th Cir.1992). The Court additionally notes that the Plaintiffs are highly experienced litigators and finds that they do not need a lawyer to assist them in presenting their case. *See Merritt v. Faulkner,* 697 F.2d 761, 764 (7th Cir.1983). Inmate Stroud has litigated eleven civil rights actions in the U.S. District Court for the Central District of Illinois alone since 1989; Carter and Wren have filed four suits; and Lemons, three. The Plaintiffs' motion for appointment of counsel "for determination of class certification" will accordingly be denied.

Turning to the substantive merits of the case, the Court finds that the Plaintiffs improperly equate mere inconvenience with a

violation of their civil rights. Prisoners, of course, are not entitled to the long-distance carrier of their choice. The fact that the Plaintiffs preferred the old long distance system, and that it worked fine in the Plaintiffs' view, does not implicate the Constitution. "Prisons are not required to provide and prisoners cannot expect to receive the services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988). The courts generally do not interfere with such prison administrative matters in the absence of constitutional concerns. *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

■ The Supreme Court has recognized that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987), "nor do they bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside.'" *Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459 (1989). The federal courts have accordingly held that prison inmates retain their First Amendment rights to communicate with family and friends, including reasonable access to the telephone. Unreasonable restrictions on prisoners' telephone access may violate the First and Fourteenth Amendment. *Tucker v. Randall,* 948 F.2d 388, 391 (7th Cir.1991). Denial of attorney telephone calls, furthermore, would run afoul of the Sixth Amendment. *Id.*

■ However, the First Amendment's protection of communication is not without restriction, due to the security problems inherent in correctional facilities. *Martin v. Tyson,* 845 F.2d 1451, 1457 (7th Cir.1988), *cert. denied,* 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988), *citing Martin v. Brewer,* 830 F.2d 76, 78 (7th Cir.1987). An inmate "has no right to unlimited telephone use." *Benzel v. Grammer,* 869 F.2d 1105, 1108 (8th Cir.1989), *cert. denied,* 493 U.S. 895, 110 S.Ct. 244, 107 L.Ed.2d 194 (1989). Instead, the exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, "subject to court scrutiny for unreasonable restrictions."

*Washington v. Reno,* 35 F.3d 1093, 1100 (6th Cir.1994) (overturning a preliminary injunction barring a federal prison's installation of a phone system similar to the one challenged in the case at bar); *see also Strandberg v. City of Helena,* 791 F.2d 744, 747 (9th Cir. 1986). Monitoring of inmate telephone calls is acceptable because of legitimate concerns regarding prison security. *Martin v. Tyson,* 845 F.2d at 1458.

■ The Court finds as a matter of law that the system in place at W.I.C.C. is not "unreasonable." Some of the goals of the telephone system are outlined in the request for proposals issued by the Department of Central Management Services:

A. The system should not provide the service through the use of live operators. Automated systems are preferred.

B. Central office based systems are preferred for additional security, durability, quick repair and efficient call validation.

C. The system should allow for off-site diagnostics.

D. The system should provide call validation to minimize fraud.

E. The system should be as secure from inmate tampering as possible.

F. The system should discourage fraudulent calling.

. . .

(Request for Proposals, Exhibit AA to Complaint, at p. 21.) The Department of Corrections articulated legitimate reasons for implementing the automated system. The Plaintiffs have provided no evidence to support their claim that the Defendants put a new system in place to frustrate inmates and impede their telephone access.

Plaintiff Lemons states in his affidavit opposing summary judgment that he objects to the assignment of a "PIN" number on "religious" grounds. Lemons purportedly associates a PIN number with the "Mark of the Beast." The complaint mentioned no such religious concerns; it is unfair to the Defendants to raise a new cause of action at the summary judgment stage of the proceedings.

In any event, the Court notes that the assignment of personal identification numbers is a part of modern life—prison life in

particular. Mr. Lemons already is classified by an inmate registration number; the Court finds no authority holding that inmate i.d. numbers violate the First Amendment. *Compare Bowen v. Roy,* 476 U.S. 693, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986) (rejecting Native American's constitutional challenge, on spiritual grounds, to the use of social security numbers in food stamp and AFDC programs); *see also Azeez v. Fairman,* 795 F.2d 1296, 1298–99 (7th Cir.1986) (in light of interests of smooth prison operation, authorities were not required to recognize inmates' non-statutory religious name changes). The assignment of a second identification number for making telephone calls places little additional burden on the Plaintiff; on the other hand, it would be extremely cumbersome for prison officials to devise an alternate system to accommodate Lemons by exempting him from the PIN requirement.

The Plaintiffs challenge, presumably on grounds of privacy, the requirement that they must provide the names and addresses of intended phone call recipients, as well as the nature of their relationship with the prisoner. It strikes the Court that any privacy objection should be raised by the non-incarcerated persons who do not want to release personal information to prison officials. In any event, the Court notes that prison regulations concerning prison visitors demand similar information; the Court discerns no basis for distinguishing calls from visits.

I.D.O.C. prison regulations require inmates to submit a list of proposed visitors for verification, review and approval by the chief administrative officer. *See* Ill.Admin.Code, tit. 20, § 525.20(b) (1987). Correctional staff is then permitted to interview or request background information from potential visitors to determine that a visit does not threaten prison safety or security. 525.20(b)(1). The visitor's relationship with the committed person may be considered as a factor in determining whether visits are appropriate. 525.20(b)(5)(C). The Court has found no authority questioning the validity of such rules.

Similar concerns apply to inmate telephone calls (although introduction of contraband into the institution is, of course, a lesser concern). Prison officials have a legitimate interest in ensuring that inmates do not harass outsiders or conduct illegal activity by telephone. The entry of telephone lists into the computerized system facilitates call-blocking when outsiders request that they receive no calls from the prison, when AT & T suspects fraud or encounters billing problems, or when prison officials deem communications "to pose a threat to the safety and security of the facility." Prisoners are entitled to disclose only the most basic of information; the Court further notes that the same information could probably be gathered even without the simple forms since the system keeps track of numbers called and monitors and records phone calls.

The Court likewise finds no privacy violation in prison officials' contacting attorneys and other "outsiders" when inmates report problems in contacting those individuals. There is no evidence that prison officials have harassed call recipients, questioned them about the nature of their relationship with the prisoner, or grilled them about the content of phone conversations. The evidence shows that prison officials have phoned intended call recipients in good faith to determine and correct whatever problem has prevented them from being reached by phone.

The requirement of a thirty-number phone list does not contradict prison rule 525.150, as the Plaintiffs argue. Inmates may still presumably call "anyone in the free community anywhere in the continental United States and Puerto Rico." Telephone procedures at W.I.C.C. simply qualify that the call recipient must appear on the inmate's phone list. Furthermore, even assuming that the phone list rule was a breach of 525.150, a violation of a state prison regulation does not necessarily amount to a constitutional violation actionable under 42 U.S.C. § 1983. *See, e.g., Russ v. Young,* 895 F.2d 1149, 1152–54 (7th Cir.1989).

The Plaintiffs claim that some people they would like to call are loathe to give their names because they were "harassed" by Consolidated Communications, the previous long distance provider. That argument somewhat contradicts the Plaintiff's praises of the old telephone system as infinitely superior to the

one currently in place. The nature of the alleged "harassment" is unspecified; it may be that collectors contacted call recipients who refused to pay their telephone bills. Regardless, the current telephone system cannot be faulted simply because some people had unpleasant experiences with the old system. The Plaintiffs' outside contacts are free to decide whether they want to receive collect calls from the prison.

The Plaintiffs additionally charge that the system is over-priced and that obtaining reimbursement for aborted telephone calls is difficult. Phone records submitted by the Plaintiffs themselves show that the price of telephone calls to a Florida number ranged anywhere from just thirty cents to $3.20 a minute. (Exhibit I to the Plaintiff's brief opposing summary judgment, excerpts from a phone bill, does not identify the AT & T customer or the inmate caller.) Such long distance collect-call rates are not so out-of-line with normal phone rates as to be unconscionable. Again, nothing precludes the prisoners and their outside contacts from writing to each other to save money.

The Plaintiffs have no standing to sue regarding problems obtaining refunds. Such matters "must be handled by the customer, their [sic] local telephone company and AT & T." *See* Memorandum of June 26, 1995, to Plaintiff Stroud from the Defendant Cross. Even assuming that phone call recipients have had trouble arranging for refunds after experiencing calling problems—and the Plaintiffs have provided no concrete examples of any such unresolvable disputes—the Plaintiffs themselves have suffered no constitutional injury.

The Plaintiffs' preference for a voice-activated collect call system is not constitutionally protected. If, for some reason, phone call recipients refuse to accept calls because they do not recognize the name under which the inmate is incarcerated, then the inmate need simply write to the friend or family member to advise them of that name. (And it is doubtful that many outsiders would have so many relatives, friends, or associates at

W.I.C.C. that they would have to engage in prolonged guessing as to the identity of an inmate caller.)

The Plaintiffs' assertion that some inmates and outsiders are illiterate and therefore cannot write to each other is irrelevant. This is not a class action. There is no indication that the named Plaintiffs cannot inform would-be call recipients as to phone procedures at W.I.C.C. The Plaintiffs are not constitutionally entitled to make collect calls in a manner that those receiving the call are able to hear the inmate's voice on the other end of the line when deciding whether to accept the charges.

■ There is no triable issue as to whether the new system has deprived the Plaintiffs of reasonable opportunity to communicate with their attorneys. In fact, the Plaintiffs "concede that they may not be able to make a First Amendment claim in regards to access to the courts." The Court agrees.

The nineteen-day delay endured by Wren when he wanted to contact an attorney cannot be attributed either to malicious intent on the part of the defendants, or a flaw in the system. The attorney was not on Wren's phone list, Wren at first refused to add the lawyer to his list, and then prison officials had to find a non–800 number.

Furthermore, Wren has shown no prejudice to pending or contemplated litigation, a requirement for liability under 42 U.S.C. § 1983. *Shango v. Jurich,* 965 F.2d 289 (7th Cir.1992). Wren has not explained the nature of his "emergency" telephone call to an attorney not on his telephone list; the Court cannot conjecture how a nineteen-day delay might have caused detriment to a lawsuit.[2]

Wren also complains that calls to his attorneys were disconnected for no apparent reason on four occasions. The occasional system failures do not amount to a denial of access to the courts; nor is the Court persuaded, based on a handful of isolated instances, that the "system intentionally cuts off attorney calls." [*Compare Wellman v. Faulkner,* 715 F.2d 269 (7th Cir.1983) (the

---

2. Wren charges that he also had trouble contacting the attorney for Kerwin Smith, an inmate in whose litigation Wren was assisting. However, Wren cannot sue on behalf of Smith. This is not a class action, as discussed *supra,* and Smith is not a named plaintiff in this lawsuit.

occasional, unintentional mishandling of legal mail does not rise to the level of a constitutional violation). The infrequent occurrences of disconnected attorney phone calls are insufficient to support an inference that W.I.C.C.'s phone system is so deficient as to inordinately interfere with inmates' access to counsel.

W.I.C.C. business administrator John Johnson states in his affidavit that attorney phone calls are neither monitored nor recorded. The Plaintiffs' unsupported assertion to the contrary, based "upon information and belief," is insufficient to withstand summary judgment. (In any case, the court of appeals for this circuit has held that monitoring of attorney-client conversations may be permissible if the prisoner's right to confer with counsel is not substantially affected. *Tucker v. Randall,* 948 F.2d 388, 391 (7th Cir.1991).)

Plaintiff Carter claims that he was "denied access" to an attorney because the friend attempting to make arrangements to secure counsel for Carter is uncomfortable providing personal information to prison officials. Carter asserts: "because of the present inmate collect call system in effect, [I] was prevented from pursuing contemplated litigation."

■■■■ Prison officials cannot be blamed for the reluctance of the Plaintiff's friend to comply with telephone procedures. If no friend or relative was willing to help the Plaintiff contact counsel on his behalf, nothing precluded the Plaintiff from using the yellow pages or writing letters to lawyers on his own. Furthermore, the Plaintiff's conclusory allegation of prejudice is meaningless. Such an allegation is inadequate if it "offers no specific facts to support these allegations— no court dates missed; no inability to make timely filings; no denial of legal assistance to which he was entitled; and no loss of a case which could have been won." *Martin v. Davies,* 917 F.2d 336, 340 (7th Cir.1990), *cert. denied,* 501 U.S. 1208, 111 S.Ct. 2805, 115 L.Ed.2d 978 (1991).

The various burdens alleged by the Plaintiffs, neither taken separately nor as a whole, amount to unreasonable restrictions on the Plaintiffs' right to make telephone calls. Plaintiff Stroud alone was able to make 904 calls totalling 14,348 minutes (or 239 hours) of phone time during an eleven month period. Presumably, the other Plaintiffs could have made just as many calls, the budgets of friends and family members permitting. The Court finds as a matter of law that the telephone system at W.I.C.C. is constitutionally adequate.

■■■■ Irrespective of whether the current telephone system at W.I.C.C. passes constitution.muster, the Defendants are entitled to qualified immunity. State officials performing discretionary acts enjoy qualified immunity when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known at the time the incident occurred. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Zorzi v. County of Putnam,* 30 F.3d 885, 891 (7th Cir.1994). While the courts have generally recognized a right of inmates to use the telephones, the parameters of that right are nowhere near clearly established. The Court found only one case discussing the use of phone lists and PIN numbers; in that case, *(Washington v. Reno, supra )* the court allowed the prison to proceed with installation of the similar system. Because the Plaintiffs have no clearly established right to a particular telephone system, they cannot recover damages even if the phone system in place at W.I.C.C. is eventually invalidated.

### CONCLUSION

In sum, no material facts are in dispute and the Court concludes that the Defendants are entitled to judgment as a matter of law. The Court rejects the Plaintiffs' arguments both that the recently implemented telephone system constitutes an "exaggerated response to security concerns, unrelated to legitimate penological interests," and that telephone procedures at W.I.C.C. unreasonably impinge on the Plaintiffs' right to communicate with attorneys and other outsiders. None of the Plaintiffs' complaints about trivial inconveniences associated with the telephone system implicates the federal Constitution.

IT IS THEREFORE ORDERED that the D.O.C. Defendants' motion for summary judgment is allowed.

IT IS FURTHER ORDERED, on the Court's own motion, that summary judgment is also granted in favor of the AT & T Defendants.

The Clerk of the Court is directed to enter judgment in favor of all of the Defendants and against the Plaintiffs pursuant to Fed. R.Civ.P. 56.

The case is terminated. The parties are to bear their own costs.

IT IS FURTHER ORDERED that the Plaintiffs' motion for appointment of counsel for determination of class certification is denied as moot.