101 F.3d 110
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Charles B. DIETZEN, Plaintiff-Appellant,
v.
William MORK, John P. Snider, and Waupaca County,
Defendants-Appellees.
 No. 95-2086.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 25, 1996.*
Decided Oct. 25, 1996.
 
 Before BAUER, FLAUM and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Charles Dietzen was arrested between 3:30 and 4:00 p.m. on November 29, 1989 for retail theft. He gave the police a false name ("Brian J. Woller") and a false address (a potato field). Dietzen signed a waiver of his right to an attorney and was booked into the Waupaca County Jail around 8:30 p.m. November 29. According to Dietzen, upon orders from prosecuting attorney John Snider, he was not given a phone call. On November 30, Dietzen appeared in court for a bail hearing, and his bail was increased from $1,100 to $5,000. At 3:46 p.m. November 30, Dietzen was given permission to use the telephone (although, apparently, he did not make any calls until December 1).
 
 
 2
 Pending trial on misdemeanor charges (Dietzen had rented and failed to return tapes, game cartridges, and equipment from various video stores). Dietzen remained at the Waupaca County Jail. According to Dietzen, he was held in punitive confinement for fifty days: he was housed in segregation and only let out of his cell once a week for a ten-minute shower, and he was given no health care or recreation opportunities. Eventually Dietzen pleaded "no contest" to a felony charge (the misdemeanors had been aggregated), allegedly because of vindictive prosecution, the unconstitutional pretrial confinement, and ineffective assistance of counsel. The same day he was released from segregation and treated the same as other inmates. Dietzen served two years of imprisonment. He filed suit against several defendants[1] on January 24, 1994.
 
 
 3
 On February 8, 1994, the court dismissed many of Dietzen's claims and named defendants and allowed him to proceed in forma pauperis against Sheriff William Mork, prosecutor John Snider, and Waupaca County with respect to the allegations that 1) that Mork had him arrested and held without allowing him a phone call; 2) Snider ordered that Dietzen not be allowed to make a phone call before his bail hearing; 3) Dietzen was held in punitive solitary confinement for fifty days without any due process; and 4) Dietzen was denied medical care and recreation. Subsequently, Dietzen further sought to amend his complaint. The district court granted summary judgment to defendants, denied Dietzen leave to amend, and denied his motions to compel production of documents (the jail record) and for appointment of counsel.
 
 I. Mork
 
 4
 As in the district court, Mork contends on appeal that Dietzen's claims against him are barred by claim preclusion (res judicata ). The three elements that are necessary to apply res judicata are: (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suit; and (3) an identity of parties or privies in the two suits. People Who Care v. Rockford Bd. of Educ., 68 F.3d 172, 177 (7th Cir.1995). Dietzen previously made almost exactly the same assertions regarding his placement in segregation and the conditions of his confinement against Mork in a suit dismissed for failure to state a claim. Dietzen v. Mork, No. 90-C-1191 (E.D.Wis. Jan. 9, 1991) (appellee's appendix 106). Such a dismissal acts as adjudication on the merits. Cannon v. Loyola Univ. of Chicago, 784 F.2d 777, 780 (7th Cir.1986), cert. denied, 479 U.S. 1033 (1987). Thus, Dietzen's claims against Mork in the instant suit are barred by res judicata, and Mork cannot be held liable for the conditions of Dietzen's pre-trial confinement.
 
 
 5
 Dietzen failed to support his allegations that Mork conspired with Snider to keep him in solitary confinement until he accepted a plea agreement, and he presented no evidence that Mork had personal knowledge of the refusal to give Dietzen a phone call. Thus, summary judgment was properly granted on those claims.
 
 II. Snider
 
 6
 Dietzen's claims against Snider concern 1) Snider's direction to police before and during Dietzen's booking not to allow Dietzen a phone call until after Dietzen was taken before a magistrate and his bail bond was increased, and 2) Snider's allegedly conspiring with Mork to place Dietzen in solitary confinement until Dietzen accepted an illegal plea agreement.
 
 A.
 
 7
 The district court concluded Dietzen's phone call allegations were meritless given that he alleged no denial of the right to counsel or that compelled self-incrimination resulted from the lack of telephone privileges. Dietzen argues that the district court erred in concluding his rights were not violated as his claims are brought under the First, Fourth, Fifth, Thirteenth, and Fourteenth Amendments, rather than the Sixth Amendment.
 
 
 8
 Dietzen's federal constitutional rights were not violated by the temporary deprivation of telephone privileges. We decline to adopt Dietzen's assertion that he had an absolute constitutional right to a telephone call. See State Bank of St. Charles v. Camic, 712 F.2d 1140, 1145 n. 2 (7th Cir.) ("[T]here is no constitutional requirement that a phone call be permitted upon completion of booking formalities."), cert. denied, 464 U.S. 995 (1983); Harrill v. Blount County, 55 F.3d 1123, 1125 (6th Cir.1995) ("The right to make a telephone call immediately upon arrest is not a recognized property right, nor is it a traditional liberty interest recognized by federal law."). Rather, the right to make a telephone call occurs only when certain constitutional rights are implicated, for example the right to consult with counsel. Tucker v. Randall, 948 F.2d 388, 390-91 (7th Cir.1991). Dietzen, however, expressly disclaims any Sixth Amendment claims.
 
 
 9
 Although we note that "unreasonable restrictions on prisoner's telephone access may also violate the First and Fourteenth Amendments," id. at 391, the restrictions here (given that Dietzen makes no claim of denial of access to counsel) were not unreasonable. See Brown v. Patterson, 823 F.2d 167, 169 (7th Cir.) ("Although a prolonged confinement of an arrested person without a hearing to determine whether he is the person named in the warrant would be a deprivation of liberty without due process of law and thus violate the Fourteenth Amendment, there is no suggestion that 24 hours was unreasonable in the circumstances."), cert. denied, 484 U.S. 855 (1987). We also decline to find, as Dietzen urges, that Wisconsin's bail bond procedure gives him a federally-protected liberty interest in placing a phone call. Cf. Harrill, 55 F.3d at 1125.
 
 
 10
 Dietzen's claims regarding his Fourth Amendment rights must also fail. The Fourth Amendment mandates that a detainee arrested without a determination of probable cause be brought before a magistrate within a reasonable time, generally 48 hours. County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991); Gerstein v. Pugh, 420 U.S. 103, 126 (1975). Dietzen was brought before a magistrate approximately 24 hours after his arrest, thus satisfying constitutional requirements.
 
 B
 
 11
 Dietzen further alleges that Snider conspired with Mork to place him in solitary confinement for fifty consecutive days in order to force him to accept a plea agreement. He contends that such treatment "punished" him in violation of his rights (as a pre-trial detainee) under the Due Process Clause.[2]
 
 
 12
 As the district court recognized, Dietzen presents absolutely no factual support for these contentions. There is no indication that Snider had any involvement in the administration of the Waupaca County Jail or the circumstances of Dietzen's confinement.
 
 III. Waupaca County
 
 13
 Although a local governmental unit is subject to suit under § 1983, its policy or practice must be the source of the constitutional violation. McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir.1995). This court has stated:
 
 
 14
 Case law recognizes three ways in which a municipality's policy can violate an individual's civil rights: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law'; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.' "
 
 
 15
 Id. (citations omitted).
 
 
 16
 In accord with our decision that a temporary denial of telephone access did not deny Dietzen his constitutional rights, we hold that the county (which otherwise may have been liable under the policymaker doctrine, see Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986)), is not liable for any such deprivation. Further, Dietzen presents no evidence to support a contention that the county had a policy or practice of placing detainees in segregation to force them to accept detrimental plea agreements. Dietzen's claims regarding the conditions of his confinement, including the lack of recreation and health care facilities, may be construed as a challenge to the county's policies regarding the administration of the Waupaca County Jail. These claims are meritless, however, because Dietzen fails to show that the jail does not provide access to health care when necessary (Dietzen himself was taken for a mental evaluation), and defendants submitted evidence that health care was available. Additionally, we have previously recognized that inmates confined for short periods of time without out-of-cell exercise opportunities do not necessarily have a constitutional claim. Harris v. Fleming, 839 F.2d 1232, 1236 (7th Cir.1988). Rather, lack of exercise rises to a constitutional violation only where "movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." French v. Owens, 777 F.2d 1250, 1255 (7th Cir.1985). Dietzen has not shown that the county's administration of the jail results in such constitutional deprivation.
 
 IV. Denials of Motions
 
 17
 The district court denied Dietzen's motions to amend his complaint, to compel the production of records, and for appointment of counsel. Each of these is reviewed for an abuse of discretion, and given that the proposed amendments were meritless, the records were made available at defendants' attorneys' office to plaintiff's representatives (and that it did not appear that the production of the jail record would bolster plaintiff's claims), and that plaintiff appeared capable of trying this civil action himself, the district court did not abuse its discretion here.
 
 
 18
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 The original complaint named John P. Hoffman, William Mork, John P. Snider, William F. Eich, James E. Doyle, the State of Wisconsin, and Waupaca County. On appeal, Dietzen does not argue the dismissal of defendants Hoffman, Eich, Doyle, and Wisconsin
 
 
 [2]
 Dietzen correctly contends that, as a pre-trial detainee, it is the Due Process Clause of the Fourteenth Amendment (which prohibits any punishment), and not the Eighth Amendment (which concerns only "cruel and unusual punishment"), that applies in this case. Antonelli v. Sheahan, 81 F.3d 1422, 1427 (7th Cir.1996)